UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CAROLYN LEPAGE and DOUGLAS BRAYTON,<br><br>Plaintiffs,<br><br>v.<br><br>THE HARTFORD PROPERTY & CASUALTY INSURANCE, an insurance company; and STEWART TITLE GUARANTEE COMPANY, an insurance company,<br><br>Defendants. | CASE NO. C19-5376 BHS<br><br>ORDER DENYING PLAINTIFF'S MOTION TO REMAND |

This matter comes before the Court on Plaintiffs Carolyn LePage ("LePage") and Douglas Brayton's ("Brayton") (collectively "Plaintiffs") motion to remand. Dkt. 4. The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby denies the motion for the reasons stated herein.

## I. PROCEDURAL HISTORY

On March 13, 2019, Plaintiffs filed a complaint against Defendants the Hartford Property & Casualty Insurance Company ("Hartford") and Stewart Title Guarantee

Company ("Stewart") (collectively "Defendants"). Dkt. 1-2.[1] Plaintiffs alleged a variety of claims including breach of the duty to defend, bad faith, violation of Washington's Consumer Protection Act ("CPA"), RCW Chapter 19.86, violation of Washington's Insurance Fair Conduct Act ("IFCA"), RCW Chapter 48.30, and negligence. Dkt. 1-2, ¶¶ 1.11. The complaint stated that "[d]amages against the insurers are anticipated to be less than $75,000 at this time." Dkt. 1-2, ¶ 2.1.

On May 3, 2019, Hartford filed a notice of removal in this Court. Dkt. 1. On May 10, 2019, Plaintiffs filed a motion to remand. Dkt. 4. On June 3, 2019, Hartford responded. Dkt. 12. On June 7, 2019, Plaintiffs replied. Dkt. 14.

## II. FACTUAL BACKGROUND

LePage and Brayton "are in a long term committed personal relationship" and live at 1002 East St. Andrew Drive in Shelton, Washington. Dkt. 1-2, ¶ 1.1. On July 13, 2018, "a lawsuit was filed against LePage and Brayton." Dkt. 1-2, ¶ 1.4. Hartford identifies the underlying matter as *Larry J. Smith et al. v. Carolyn LePage et al.*, No. 18-2-0438-23, filed in the Superior Court of Washington for Mason County. Hartford explains that the claims deal with a dispute over property boundaries and harm to mature trees near the boundary between Plaintiffs' property and that of another couple, the Smiths, the plaintiffs in the underlying action. Dkt. 1 at 2. Hartford explains that the Smiths "claim damage to their property and hired experts—a forensic arborist and a real estate

---

[1] In its notice of removal, Hartford informs the Court that the name of its firm is actually "Property & Casualty Insurance Company of Harford and informs the Court that it "believes 'Stewart Title Guarantee Company' is improperly named and should be 'Stewart Title Guaranty Company.'" Dkt. 1 at 1, 3 n.4.

appraiser—to value the damage to their landscaping and trees, and the alleged diminution in real property value," and sought treble damages, attorney fees, and costs. Dkt. 1 at 2–3.

LePage and Brayton tendered defense and indemnity in the underlying action to Hartford, LePage's homeowners insurance provider, and Stewart, the title insurer. Dkt. 1-2, ¶¶ 1.5–1.12.[2] Hartford agreed to defend LePage but not Brayton. *Id.* ¶ 1.7; Dkt. 1 at 3. Stewart did not agree to defend either LePage or Brayton. *Id.*, ¶ 1.11.

### III. DISCUSSION

**A. Diversity Jurisdiction**

District courts have federal question jurisdiction over all claims "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. District courts have diversity jurisdiction when the parties are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a)(1).

**1. Diversity of Citizenship**

"Diversity jurisdiction requires complete diversity between the parties—each defendant must be a citizen of a different state from each plaintiff." *In re Digimarc Corp. Derivative Litig.*, 549 F.3d 1223, 1234 (9th Cir. 2008). "A corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the state where it has its principal place of business." 28 U.S.C. § 1332(c). Diversity of citizenship is not in controversy—Plaintiffs are citizens of Washington State, Dkt. 1-2, Hartford is a citizen of

---

[2] The record does not specify who held the title insurance policy.

Indiana and Connecticut, and Stewart is a citizen of Texas. Dkt. 1, ¶ 9. Therefore, there is complete diversity among the parties.

### 2. Amount in Controversy

"The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of the defendant's liability." *Lewis v. Verizon Communications, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010). When it is not "facially evident" from the plaintiff's complaint that the amount in controversy exceeds $75,000, the defendant bears the burden of establishing by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional requirement. *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004) (finding the minimum amount in controversy not satisfied when the complaint alleged a number of types of damages but only specifically alleged $50,000 in general damages). "Under this burden, the defendant must provide evidence establishing that it is 'more likely than not' that the amount in controversy exceeds [$75,000]." *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996). "[W]hen the amount in controversy is satisfied at removal, any subsequent amendment to the complaint or partial dismissal that decreases the amount in controversy below the jurisdictional threshold does not oust the federal court of jurisdiction." *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 417 (9th Cir. 2018) (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 292–93 (1938)).

"Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first place." *Gaus v. Miles*, 980 F.2d 564, 566 (9th Cir. 1992). The

Supreme Court has clearly differentiated the standard for original jurisdiction and removal jurisdiction in diversity when the amount in controversy is unclear:

> [I]n cases brought in the federal court ... [i]t must appear to a legal certainty that the [plaintiff's] claim is really for less than the jurisdictional amount to justify dismissal.... A different situation is presented in the case of a suit instituted in a state court and thence removed. There is a strong presumption that the plaintiff has not claimed a large amount in order to confer jurisdiction on a federal court or that the parties have colluded to that end.

*Id.* (quoting *St. Paul Mercury Indem. Co. v. Red. Cab. Co.*, 303 U.S. 283, 288–90 (1938)). "If the complaint is silent on the amount of damages claimed, the court may also consider facts in the removal petition, and 'summary-judgment-type evidence relevant to the amount in controversy at the time of the removal.'" *Rivera v. Costco Wholesale Corp.*, No. C 08-02202-CW, 2008 WL 2740399, at *2 (N.D. Cal. July 11, 2008) (quoting *Singer v. State Farm Mut. Auto Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997)).

In support of their motion to remand, Plaintiffs submit a declaration from LePage which reads in substantive part:

> 2. I can state that damages that Mr. Brayton and I are seeking from the Defendants in this matter are in total LESS THAN $75,000 U.S. Dollars, inclusive of attorney fees and costs.
>
> 3. I am fully authorized to answer on my behalf and Mr. Brayton's. The underlying matter that prompted this bad faith action was recently resolved, which limits the damages.

Dkt. 5, ¶¶ 2–3. Plaintiffs cite two district court cases, *Moss v. Voyager Ins. Companies*, 43 F. Supp. 2d 1298, 1303 (M.D. Ala. 1999) and *Brooks v. Pre-Paid Legal Servs., Inc.*, 153 F. Supp. 2d 1299 (M.D. Ala. 2001), for the proposition that even after removal, plaintiffs may clarify the amount in controversy will not exceed the jurisdictional

threshold. Dkt. 4 at 2. Later cases in the district courts of Alabama have distinguished the reasoning in these cases as relying on *clarification* that amounts beyond $75,000 were never sought, rather than later events acting to *reduce* the amount sought post-removal which is clearly impermissible. *See Miles v. Wal-Mart Stores E., L.P.*, CV-09-RRA-0108-NW, 2009 WL 10689477, at *2 (N.D. Ala. Aug. 11, 2009); *Beasley v. Gumprecht*, Case No. 2:17-cv-563-TFM, 2017 WL 6568948, at *4 (M.D. Ala. Dec. 22, 2017). Hartford argues that LePage's declaration is not binding, is not signed by each plaintiff, and does not state that Plaintiffs "will not accept, even if awarded" a total award greater than $75,000. Dkt. 12 at 2 (emphasis omitted). Hartford accurately notes that LePage's first declaration is more limited than the declaration in *Moss*, Dkt. 12 at 1–2, stating only the amount of damages currently sought and making no promises regarding the future, *see* Dkt. 5. In support of their reply, Plaintiffs each submitted a declaration with slightly different wording, each stating that the damages they are seeking "will be" less than $75,000, inclusive of fees and costs. Dkts. 16, 17. The Court does not find any of the three declarations submitted by Plaintiffs are dispositive in the Court's assessment of what amount was in fact in controversy at the time of removal.

      Hartford's arguments for quantifying the amount in controversy at more than $75,000 center on three grounds for damages—Plaintiffs' legal fees in the underlying suit, Plaintiffs' legal fees in this suit, and Plaintiffs' claim for indemnity in the underlying lawsuit. The Court will assess each basis for quantifying Plaintiffs' damages in turn. Hartford argues that at the time of removal, the amounts included at least the Smiths'

settlement demand which totaled $65,000 plus legal fees for Brayton's defense counsel in the underlying action which totaled $20,000. Dkt. 12 at 4.[3]

Regarding Plaintiffs' legal fees in the underlying action, Hartford has submitted evidence that Brayton's legal fees totaled $19,043.08. Dkt. 13-2. Hartford argues in its response that Plaintiffs seek treble damages under both the CPA and the IFCA on both indemnity and defense costs. Dkt. 12 at 3. While Plaintiffs argue that both their complaint and their declarations estimate their total damages at less than $75,000, they do not counter Hartford's assertion that they are seeking treble damages for the fees they paid to defense counsel in the underlying suit or provide any other basis to assess a division of value among their claims. *See, e.g.* Dkts. 14, 15, 16, 17. Trebling Brayton's legal fees would total approximately $60,000. Punitive damages are considered part of the amount in controversy. *Gibson v. Chrysler Corp.*, 261 F.3d 927, 945 (9th Cir. 2001). Therefore, the Court concludes that Hartford has established by a preponderance of the evidence that at least $60,000 in damages in the form of legal fees was in controversy at the time of removal.

Regarding Plaintiffs' attorney fees incurred in this action, Hartford argues that $60,000 "plus attorney's fees incurred in this action, still exceeds $75,000." Dkt. 12 at 5. Hartford does not explain on what basis the Court should conclude that Plaintiffs have

---

[3] Hartford's counsel submitted a declaration with the Smiths' settlement demands and the invoice from Plaintiffs' defense counsel in the underlying action as exhibits. Dkt. 13. The Smiths' demand letters estimate their total property damage at $50,000 at the low end, and their claim for intentional infliction of emotional distress damages at $15,000. Dkt. 13-1. The invoice from Plaintiffs' defense counsel lists total fees of $19,043.08 accrued through April 30, 2019 and lists the underlying action as the matter that is the subject of the fees. Dkt. 13-2.

incurred $15,000 in attorney fees in the instant action. Therefore, Hartford has not met its burden to prove an amount of Plaintiffs' legal fees in this action by a preponderance of the evidence.[4]

Regarding Plaintiffs' claim for indemnity in the underlying lawsuit, Hartford submitted evidence that the Smiths demanded $65,000 and argues that Plaintiffs' damages would easily exceed $75,000 "if the settlement of indemnity was not finalized." Dkt. 12 at 4; Dkt. 13-1. A letter offering to settle the dispute for a particular amount "is relevant evidence of the amount in controversy if it appears to reflect a reasonable estimate of the plaintiff's claim." *Cohn v. Petsmart*, 281 F.3d 837, 840 (9th Cir. 2002). The parties agree that at least a tentative settlement was reached prior to removal. Dkt. 12 at 4; Dkt. 14 at 3.[5] Plaintiffs have submitted declarations stating that the amount of settlement was less than $75,000. Dkts. 16, 17. Plaintiffs' evidence, that the amount of the settlement in the underlying action was less than $75,000, does not tell the Court anything about whether or how the settlement amount varied from the settlement demand. Plaintiffs' declarations that the settlement of the underlying matter "limits the damages" also fail to give the Court even an approximate picture of the settlement's terms. *See* Dkts. 5, 16, 17. Though it is a very close question given that it appears that the settlement of indemnity was close to finalization prior to removal (and the parties'

---

[4] Hartford also argues that Plaintiffs seek compensatory damages but again provides no basis from which the Court may estimate these damages, thus failing to carry its burden.

[5] Plaintiffs also state that LePage was represented by Hartford counsel in the settlement negotiations and Hartford's adjustor approved the settlement, but do not explain what conclusion they believe the Court should draw from these facts or whether the settlement also allocated liability to Brayton, represented by separate counsel. Dkt. 14 at 3.

arguments may suggest that the entirety of the settlement was to be paid by Hartford) the Court concludes by a preponderance of the evidence that indemnity was still in controversy at the time of removal. The Court also concludes that a bare preponderance of the evidence suggests that indemnity was in controversy for an amount that was closer to $65,000 than $15,000 (the minimum necessary to bring the amount in controversy over the jurisdictional threshold when considered in combination with the evidence the Court has already assessed). While it is generally unlikely that something would upset a settlement at such a late stage, the amount in controversy assesses only whether an amount is "at stake," not the likelihood of recovery of the amount. *Chavez*, 888 F.3d at 417. Therefore, the Court concludes that Hartford has met its burden to show the amount in controversy exceeded $75,000 at the time of removal.

## IV. ORDER

Therefore, it is hereby **ORDERED** that Plaintiffs' motion to remand, Dkt. 4, is **DENIED**.

Dated this 2nd day of July, 2019.

BENJAMIN H. SETTLE
United States District Judge